IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-45

No. 26A21

Filed 6 May 2022

CHARLES BLUE

v.

THAKURDEO MICHAEL BHIRO, P.A., DIXIE LEE BHIRO, P.A., and LAUREL HILL MEDICAL CLINIC, P.C.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 275 N.C. App. 1, 853 S.E.2d 258 (2020), reversing and remanding an order granting defendants' motion to dismiss plaintiff's complaint entered on 10 December 2019 by Judge Gale M. Adams in Superior Court, Scotland County. Heard in the Supreme Court on 23 March 2022.

*Ward and Smith, P.A., by Christopher S. Edwards and Alex C. Dale, for plaintiff-appellee.*

*Batten Lee, PLLC, by Gary Adam Moyers and Gloria T. Becker, for defendant-appellants.*

NEWBY, Chief Justice.

In this case we determine whether the trial court was required to convert a motion to dismiss under N.C. R. Civ. P. 12(b)(6) to a motion for summary judgment under Rule 56. A motion to dismiss under Rule 12(b)(6) asserts that the complaint, even when the allegations are taken as true, fails to state a claim upon which relief can be granted. If, however, a trial court considers matters outside the pleading, then

it must convert the motion to a motion for summary judgment. Here the trial court did not consider matters outside the pleading and thus was not required to convert the motion. Therefore, we reverse the decision of the Court of Appeals and remand to the Court of Appeals for consideration of plaintiff's remaining arguments.

¶ 2      Because this case arises from a motion to dismiss under Rule 12(b)(6), we take the following allegations from the complaint as true. Defendants Thakurdeo Michael Bhiro and Dixie Lee Bhiro were physician assistants licensed to practice in North Carolina and were employed by defendant Laurel Hill Medical Clinic, P.C. (the Clinic). The Clinic "is a family practice located in Laurel Hill, North Carolina . . . comprised of family medicine practitioners who provide comprehensive care to patients of all ages."

¶ 3      The Bhiros were plaintiff's primary care providers. The Bhiros treated plaintiff "for a variety [of] ailments" and provided "routine physical examinations, medic[ation] management, and preventative medicine." On 24 January 2012, Mr. Bhiro ordered a prostate specific antigen (PSA) test to screen plaintiff for prostate cancer. Generally, a PSA test result of 4 nanograms per milliliter of blood "is considered abnormally high for most men and may indicate the need for further evaluation with a prostate biopsy." The results from this test, which were provided to the Bhiros, indicated that plaintiff's PSA level was 87.9 nanograms per milliliter, significantly higher than the normal range. Though the Bhiros continued to treat

plaintiff for other issues, they never "provided any follow up care or referrals as a result of the elevated PSA test result." The results from another PSA test performed six years later on 22 March 2018 indicated that plaintiff's PSA level was 1,763 nanograms per milliliter. Plaintiff was diagnosed with metastatic prostate cancer soon thereafter. The Bhiros "continued as [p]laintiff's primary medical care providers until January, 2019." Plaintiff filed his complaint on 17 June 2019, contending that the Bhiros were negligent by failing to provide follow-up care after learning the results of the 24 January 2012 PSA test and failing to diagnose plaintiff with prostate cancer. Moreover, plaintiff alleged that the Clinic was vicariously liable for the Bhiros' negligence.

¶ 4    All defendants jointly filed a motion to dismiss plaintiff's complaint under Rule 12(b)(6), arguing that plaintiff's action was barred by the three-year statute of limitations and the four-year statute of repose in N.C.G.S. § 1-15(c). In response, plaintiff contended that his complaint was timely filed in 2019 despite his delay because the Bhiros continuously treated him since the allegedly negligent act occurred in 2012. Both defendants and plaintiff submitted memoranda of law in support of their positions. At the hearing on defendants' motion on 12 November 2019, defendants' counsel argued that "when a motion to dismiss is brought, we must look at the four corners of the complaint." Plaintiff's counsel agreed, focusing on the allegations in the complaint throughout his argument. At the end of the hearing,

plaintiff's counsel made an oral motion for leave to amend the complaint, stating that "if Your Honor does not believe I included enough factual information in the complaint, we'd request leave to amend the complaint." On 10 December 2019, the trial court entered an order granting defendants' Rule 12(b)(6) motion and implicitly denying plaintiff's motion for leave to amend the complaint, stating in part that:

> The [c]ourt, having heard arguments of parties and counsel for the parties and having reviewed the court file, pleading[ ], and memorand[a] of law submitted by both parties, . . . finds that Plaintiff failed to state a claim upon which relief can be granted and the Defendants' Motion to Dismiss should be allowed pursuant to N.C. R. Civ. P. 12(b)(6).

Thus, the trial court dismissed plaintiff's claims with prejudice. Plaintiff appealed.

¶ 5 At the Court of Appeals, plaintiff argued that the trial court (1) converted the Rule 12(b)(6) motion to a Rule 56 motion and thus erred by not giving the parties sufficient opportunity for discovery and to present evidence; (2) erred by granting the Rule 12(b)(6) motion, assuming it was not converted; and (3) erred by denying his oral motion for leave to amend the complaint. *Blue v. Bhiro*, 275 N.C. App. 1, 3, 6–7, 853 S.E.2d 258, 260, 262 (2020). A divided panel of the Court of Appeals agreed with plaintiff that the trial court converted the motion to dismiss to one for summary judgment and should have provided additional time for discovery and the presentation of evidence. *Id*. at 2, 853 S.E.2d at 259–60.

¶ 6    The Court of Appeals began its analysis by "determin[ing] whether the trial court reviewed the [c]omplaint under Rule 12(b)(6) . . . or the pleadings and facts outside the pleadings under Rule 56." *Id.* at 3, 853 S.E.2d at 260–61 (emphasis omitted). To determine whether the motion was converted, the Court of Appeals looked to whether the trial court "consider[ed] . . . matters outside the pleading[ ]." *Id.*, 853 S.E.2d at 261. The Court of Appeals acknowledged that "memoranda of law and arguments of counsel are generally 'not considered matters outside the pleading[ ].' " *Id.* at 5, 853 S.E.2d at 261 (quoting *Privette v. Univ. of N.C. at Chapel Hill*, 96 N.C. App. 124, 132, 385 S.E.2d 185, 189 (1989)). The Court of Appeals, however, also noted an apparent exception, that "the consideration of memoranda of law and arguments of counsel can convert a Rule 12 motion into a Rule 56 motion if the memoranda or arguments 'contain[ ] any factual matters not contained in the pleading[ ].' " *Id.*, 853 S.E.2d at 262 (first alteration in original) (quoting *Privette*, 96 N.C. App. at 132, 385 S.E.2d at 189). The Court of Appeals reasoned that the terms of the trial court's order expressly indicated that the trial court considered the parties' memoranda and arguments of counsel, "both of which contained facts not alleged in the [c]omplaint." *Id.* at 4, 853 S.E.2d at 261 (emphasis omitted). According to the Court of Appeals, the trial court did not expressly exclude those facts which were not alleged in the complaint. *Id.* at 6, 853 S.E.2d at 262. Thus, the Court of Appeals

BLUE V. BHIRO

2022-NCSC-45

*Opinion of the Court*

concluded that the trial court "considered matters beyond the pleading[ ]" and converted the Rule 12(b)(6) motion to a Rule 56 motion. *Id.*

The Court of Appeals then noted that when a Rule 12(b)(6) motion is converted to a Rule 56 motion, Rule 12(b) provides that "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Id.* (quoting N.C.G.S. § 1A-1, Rule 12(b), (c) (2019)). Because the trial court did not give the parties such an opportunity, the Court of Appeals concluded that "it would be improper for [this court] to make a determination of the statute of limitations issue on the current evidence." *Id.* For the same reason, the Court of Appeals declined to discuss plaintiff's argument that the trial court erred by denying his motion for leave to amend the complaint. *Id.* at 6–7, 853 S.E.2d at 262. Thus, the Court of Appeals reversed the trial court's order and remanded the case to the trial court to give the parties "a reasonable opportunity to gather and present evidence on a motion for summary judgment." *Id.* at 7, 853 S.E.2d at 263.

The dissenting opinion at the Court of Appeals, however, would have affirmed the trial court's order. *Id.* (Hampson, J., dissenting). The dissent argued that the trial court did not convert defendants' motion to dismiss. *Id.* at 7–8, 853 S.E.2d at 263. The dissent noted that although the parties' memoranda and arguments of counsel may have referenced "facts not alleged in the [c]omplaint, these were merely arguments of counsel." *Id.* at 8, 853 S.E.2d at 263. The dissent noted that "[n]o evidentiary

materials—discovery, exhibits, affidavits, or the like—were offered or submitted to the trial court." *Id*. Thus, the dissent would have held that the trial court did not consider matters outside the pleading and did not convert the motion. *Id*.

¶ 9     Accordingly, the dissent also addressed plaintiff's remaining arguments. *Id*. at 8–11, 853 S.E.2d at 263–65. The dissent argued that the claim was barred by the statute of limitations or the statute of repose in N.C.G.S. § 1-15(c) and thus the trial court properly granted the motion to dismiss. *Id*. at 8–10, 853 S.E.2d at 263–65. Further, the dissent contended that the trial court did not err by denying plaintiff's oral motion for leave to amend the complaint. *Id*. at 10–11, 853 S.E.2d at 265. Therefore, the dissent would have affirmed the trial court's order. *Id*. at 11, 853 S.E.2d at 265. Defendants appealed to this Court based upon the dissenting opinion at the Court of Appeals.

¶ 10    Defendants argue the Court of Appeals erred by holding that the trial court considered matters outside the pleading and thus converted the motion to dismiss to a motion for summary judgment. We agree.

¶ 11    Whether a Rule 12(b)(6) motion has been converted to a Rule 56 motion is a question of law subject to de novo review. *See Eastway Wrecker Serv., Inc. v. City of Charlotte*, 165 N.C. App. 639, 642, 599 S.E.2d 410, 412 (2004), *aff'd per curiam*, 360 N.C. 167, 622 S.E.2d 495 (2005); *see also Green v. Freeman*, 367 N.C. 136, 141, 749 S.E.2d 262, 267 (2013). A Rule 12(b)(6) motion focuses on the legal sufficiency of the

allegations in the complaint. *See Bridges v. Parrish*, 366 N.C. 539, 541, 742 S.E.2d 794, 796 (2013) ("We consider 'whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory.' " (quoting *Coley v. State*, 360 N.C. 493, 494, 631 S.E.2d 121, 123 (2006))). As such, when considering a Rule 12(b)(6) motion, the trial court is limited to reviewing the allegations made in the complaint. *See Kessing v. Nat'l Mortg. Corp.*, 278 N.C. 523, 533, 180 S.E.2d 823, 829 (1971) ("[U]nder Rule[ ] 12(b)(6) . . . the motion is decided on the pleading[ ] alone . . . ."). Rule 12(b) addresses a trial court's consideration of matters not included in the complaint, providing that

> [i]f, on a motion asserting the defense numbered (6), to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.

N.C.G.S. § 1A-1, Rule 12(b) (2021). Thus, "[a] Rule 12(b)(6) motion to dismiss . . . is indeed converted to a Rule 56 motion for summary judgment when matters outside the pleading[ ] are presented to and not excluded by the court." *Stanback v. Stanback*, 297 N.C. 181, 205, 254 S.E.2d 611, 627 (1979) (citing *Kessing*, 278 N.C. at 533, 180 S.E.2d at 829).

¶ 12    The phrase "matters outside the pleading" refers to evidentiary materials used to establish facts. *See Carlisle v. Keith*, 169 N.C. App. 674, 689, 614 S.E.2d 542, 552 (2005) ("While extraneous matter usually consists of affidavits or discovery

documents, it may also consist of live testimony, stipulated facts, [or] documentary evidence in a court's file." (alteration in original) (emphasis omitted) (quoting G. Gray Wilson, 1 North Carolina Civil Procedure § 12-3, at 210–11 (2d ed. 1995))). Notably, "it is axiomatic that the arguments of counsel are not evidence." *State v. Collins*, 345 N.C. 170, 173, 478 S.E.2d 191, 193 (1996). Accordingly, "[m]emoranda of points and authorities as well as briefs and oral arguments . . . are not considered matters outside the pleading." *Privette*, 96 N.C. App. at 132, 385 S.E.2d at 189 (second alteration in original) (quoting 5 Wright & Miller, Federal Practice and Procedure § 1366, at 682 (1969)). Finally, it is a "well[-]established principle that there is a presumption in favor of the regularity and validity of the proceedings in the lower court." *Phelps v. McCotter*, 252 N.C. 66, 67, 112 S.E.2d 736, 737 (1960) (citing *Durham v. Laird*, 198 N.C. 695, 153 S.E. 261 (1930)).

¶ 13          Here the trial court's order stated that it considered the "arguments of parties and counsel for the parties and . . . reviewed the court file, pleading[ ], and memorand[a] of law submitted by both parties." Nothing in the trial court's order indicates any additional documents were presented apart from the memoranda submitted by the parties. Defendants' memorandum included the pleadings, a statute, and case law as exhibits, but it did not include any evidentiary materials. Plaintiff did not include any exhibits with his memorandum. Though plaintiff's counsel made several factual assertions in his memorandum and during the hearing,

these statements by plaintiff's counsel were not evidence and thus are not matters outside the pleading. Accordingly, the trial court did not consider any matters outside the pleading.

¶ 14    Because the trial court's review was limited to the pleading, it did not convert the Rule 12(b)(6) motion to a Rule 56 motion. Therefore, the Court of Appeals erred by reversing the trial court's order. Further, the Court of Appeals majority did not determine whether the trial court properly denied plaintiff's motion for leave to amend his complaint nor whether the trial court properly granted defendants' motion to dismiss. Accordingly, we remand this case to the Court of Appeals to address these issues in the first instance. *See Wilkie v. City of Boiling Spring Lakes*, 370 N.C. 540, 540, 809 S.E.2d 853, 854 (2018) (reversing a decision of the Court of Appeals and remanding the case for the Court of Appeals to consider the defendant's remaining arguments in the first instance).

REVERSED AND REMANDED.

Justice EARLS concurring in part and dissenting in part.

I agree with the majority that the Court of Appeals erred in concluding that defendants' motion to dismiss had been or needed to be converted into a Rule 56 motion for summary judgment. I write separately to express my disagreement with the majority's decision to remand this case to the Court of Appeals. There are two remaining issues in this case—whether the trial court properly granted defendants' motion to dismiss and whether the trial court should have granted Mr. Blue leave to amend his complaint. Both are pure questions of law that have been fully briefed before this Court. There are no disputed issues of fact that need to be resolved to address these issues. There are meaningful prudential reasons why we should endeavor to resolve this dispute quickly—according to his complaint, Mr. Blue was diagnosed with metastatic prostate cancer in 2018, allegedly due to defendants' negligence. Thus, I believe resolving the outstanding legal questions rather than remanding for further proceedings would be the disposition most consistent with our responsibility to foster the fair, evenhanded, efficient, open, and meaningful administration of justice.

It is indisputable that this Court possesses the authority to resolve this case now under these circumstances. Indeed, it is routine for this Court to address dispositive issues not resolved by the Court of Appeals when doing so requires making purely legal determinations. *See, e.g., Morris Commc'ns Corp. v. City of Bessemer City*

*Zoning Bd. of Adjustment*, 365 N.C. 152, 158 (2011) ("Remand is not automatic when 'an appellate court's obligation to review for errors of law can be accomplished by addressing the dispositive issue(s).' " (quoting *N.C. Dep't of Env't & Nat. Res. v. Carroll*, 358 N.C. 649, 664 (2004))); *see also Meza v. Div. of Soc. Servs.*, 364 N.C. 61, 73 (2010) ("We now proceed to the substantive issues in the interests of judicial economy and fairness to the parties."); *N.C. Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park, Inc.*, 366 N.C. 505, 514 (2013) ("[W]hen the new analysis relies upon conclusions of law rather than findings of fact, and when the findings of fact made by the trial court are unchallenged, this Court may elect to conduct the analysis rather than to remand the case.").

¶ 17        As we explained in *Carroll*, there are multiple prudential factors that counsel in favor of fully resolving an appeal when it comes before this Court:

> In the present case, the trial court's erroneous articulation and application of the *de novo* standard of review in no way interferes with our ability to assess how that standard *should have been applied* to the particular facts of this case. Moreover, the status of [the plaintiff's] employment and salary has remained unsettled during the past six years of ongoing litigation. Thus, in the interests of judicial economy and fairness to the parties, we proceed to consider the substantive issues on appeal.

358 N.C. at 665. While it is also certainly within this Court's discretion to decide to remand the case for the Court of Appeals to resolve remaining legal issues in these circumstances, we should explain why we are choosing to remand this case rather

than reach outstanding legal issues by reference to neutral principles, and we should consistently apply those principles in considering whether a remand is necessary in this case and in future cases. In addition to the prudential factors noted in *Carroll*, such neutral and consistent principles might include the length of time the case has been pending to date, the extent to which any party is prejudiced by further delay, whether deciding the issue will result in a final disposition of the case, whether the parties have had the opportunity to fully brief the remaining issues, and whether the issue requires the routine application of well-established law such that remand would likely result in a quick resolution unlikely to engender further appeal, as opposed to an issue of first impression for this Court such that immediate guidance from this Court will be useful and more expeditious than multiple appeals.

¶ 18        In this case, although the majority in the Court of Appeals did not reach the two outstanding questions presented in Mr. Blue's appeal, the dissent did. And as the dissent and the parties' briefs make clear, the legal question the Court of Appeals will need to reach on remand is not one this Court has previously addressed. In particular, answering the question of whether Mr. Blue's complaint is time-barred will involve interpreting how the continuing course of treatment exception to the three-year statute of limitations for personal injury claims applies to care provided by a primary-care physician. This Court recognized the continuing course of treatment exception for the first time in *Horton v. Carolina Medicorp, Inc.*, 344 N.C. 133 (1996). We have

not revisited the doctrine since. There are numerous Court of Appeals opinions interpreting the doctrine in ways that are arguably internally contradictory. *Compare Whitaker v. Akers*, 137 N.C. App. 274, 277–78 (2000) (concluding that the doctrine applies when a physician continues a particular course of treatment over a period of time, so long as the doctor continues to fail to diagnose and to treat the condition), *with Glover v. Charlotte-Mecklenburg Hosp. Auth.*, 261 N.C. App. 345, 355–56 (2018) (concluding that the plaintiff need not show the treatment rendered subsequent to the original negligent act was also negligent), *writ denied, review denied*, 372 N.C. 299 (2019). Accordingly, it appears that the chances of this case coming back to this Court after the Court of Appeals answers the precise legal question presently before us, all prior to discovery and a trial, are not trivial.

¶ 19        Nor is the cost to the parties trivial, both financially and otherwise. Mr. Blue filed his complaint almost three years ago. The remaining questions before us have already been briefed and argued at least twice. If Mr. Blue prevails in the appellate process and his claim is not time-barred, his case will be remanded to the trial court for further proceedings. As a litigant with a serious life-threatening illness, justice delayed may be justice denied in this case. Here, an unnecessarily prolonged appellate process is inconsistent with the prompt and efficient administration of justice, an aim to which we all and always aspire. By contrast, these factors and considerations were not present in the case relied upon by the majority, *Wilkie v. City*

*of Boiling Spring Lakes*, 370 N.C. 540 (2018). In *Wilkie*, the issues not decided by this Court were not briefed in the first place because this Court denied discretionary review specifically as to those issues. *See* Special Order, *Wilkie v. City of Boiling Spring Lakes*, No. 44PA17 (N.C. May 3, 2017). Nor did those remaining issues implicate any novel or particularly complex legal principles: the ultimate question was whether property owners would be compensated by the government for flood damage to their home. *Wilkie,* 370 N.C. at 540. While *Wilkie* confirms the indisputable notion that this Court possesses the authority to remand cases to the Court of Appeals to decide purely legal issues in the first instance, *Wilkie* does nothing to demonstrate why doing so is necessary or appropriate in this case.

Under the circumstances of this case, jurisprudential and administrative reasons justify proceeding to resolve the two remaining outstanding issues, which were both addressed by the dissent below, briefed by the parties, and are thus properly before us. Therefore, I respectfully concur in part and dissent in part.